IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIE P.,[1]                                          Case No. 3:21-cv-01160-SB

                    Plaintiff,                          **OPINION AND ORDER**

          v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                    Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

Valerie P. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act. The Court has jurisdiction to hear this appeal

pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate

judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party and the non-governmental party's family members in this
case.

PAGE 1 – OPINION AND ORDER

Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in October 1964, making her fifty years old on November 1, 2014, her amended alleged disability onset date.[2] (Tr. 18, 22.) Plaintiff is a high school graduate who has

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-cv-00771-AA, 2013 WL 3874044, at *1 n.1 (D. Or.

completed some college coursework and no past relevant work experience. (*Id.* at 37, 44, 323-24, 330-43.) In her SSI application, Plaintiff alleges disability due primarily to bipolar disorder, posttraumatic stress disorder ("PTSD"), degenerative disc disease, and arthritis. (*Id.* at 106-07, 118.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on October 14, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 133.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on July 28, 2017. (*Id.* at 51-84.) On December 22, 2017, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 133-44.) On December 10, 2019, after granting Plaintiff's request for review, the Appeals Council remanded for further proceedings because Plaintiff "raised a challenge under the Appointments Clause of the Constitution . . . [and] the manner in which the [ALJ] was appointed," and any "defect [was] cured by th[e] remand[.]" (*Id.* at 149-53.)

On November 5, 2020, Plaintiff appeared and testified at a second administrative hearing before a newly-assigned ALJ. (*Id.* at 31-48.) On November 25, 2020, the ALJ issued a written decision denying Plaintiff's application, relying on and incorporating by reference certain "rationale set forth in the prior ALJ decision[.]" (*Id.* at 16-23.) On June 8, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's November 2020 decision the final decision of the Commissioner. (*Id.* at 1-4.) Plaintiff now seeks judicial review of that decision.

---

July 23, 2013) (citation omitted). Plaintiff filed her SSI application in November 2014. (Tr. 133, 279-84.) Plaintiff also returned to work in June 2018. (*Id.* at 34, 37.) As a result, the ALJ assessed only whether Plaintiff was disabled between "November 1, 2014 and June 1, 2018." (*Id.* at 17.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-23.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2014, her amended alleged disability onset date.

(*Id.* at 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[D]egenerative disc disease of the cervical spine with radiculopathy and degenerative joint disease of the right shoulder[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 19.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can frequently crawl and climb ramps and stairs, (2) Plaintiff can occasionally reach overhead and climb ladders and scaffolds, and (3) Plaintiff needs to be "limited to occasional exposure to hazards such as unprotected heights and/or moving mechanical parts." (*Id.* at 20.) At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 22.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a garment folder, electrical accessories assembler, and hand package inspector. (*Id.*)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred at step two of the sequential evaluation process because the ALJ failed to include Plaintiff's chronic obstructive pulmonary disease ("COPD")/emphysema and "bipolar disorder/anxiety" among her severe impairments.[3] (Pl.'s Opening Br. at 1, 5-18.) Plaintiff also argues that the ALJ erred because she failed to address the lay witness testimony provided by Plaintiff's son, Stephen B., and friend Adam Estavillo ("Estavillo"). (*Id.* at 1, 19-20.) As explained below, the Court affirms the Commissioner's decision because it is free of harmful error and supported by substantial evidence in the record.

---

[3] "COPD is a respiratory impairment characterized by chronic bronchitis or emphysema and airflow obstruction." *Energy W. Mining Co. v. Est. of Blackburn*, 857 F.3d 817, 820 n.2 (10th Cir. 2017) (simplified).

## I.    THE ALJ'S STEP-TWO SEVERITY FINDINGS

### A.    Applicable Law

At step two, "an impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The Ninth Circuit has recognized that step two is "a de minimis screening device [used] to dispose of groundless claims[.]" *Id.* at 687 (simplified).

A claimant bears the burden of demonstrating that an ALJ's step-two error was harmful. *See Howland v. Saul*, 804 F. App'x 467, 469 (9th Cir. 2020) (explaining that the ALJ bore "the burden of demonstrating harmful error," and that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination" (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds as recognized in Davis v. Kijakazi*, No. 21-3541, 2022 WL 2072656, at *1 (9th Cir. June 9, 2022))). If the ALJ resolved step two in the claimant's favor, a claimant must do two things to demonstrate harmful error.

First, a claimant must show that substantial evidence does not support the ALJ's RFC and the VE hypothetical derived therefrom. *See Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) ("[E]ven if the [step two] determination was in error, it was harmless because the ALJ considered these conditions among [the] claimed impairments in the overall [RFC] determination."); *Fowler v. Kijakazi*, No. 20-36016, 2021 WL 5823704, at *1 (9th Cir. Dec. 8, 2021) ("Any error was harmless because the ALJ still resolved step two in [the claimant's] favor and considered all medically determinable impairments (severe and non-severe) at the later steps."); *see also Venezia v. Berryhill*, 765 F. App'x 319, 320 (9th Cir. 2019)

(holding that the ALJ erred in finding no severe impairment because substantial evidence did not support such a finding, and remanding "for the ALJ to continue the sequential analysis beyond step two").

A claimant can do so by demonstrating that the ALJ erred in discounting, among other things, the claimant's symptom testimony or medical opinion evidence. *See Berg v. Saul*, 831 F. App'x 849, 850 (9th Cir. 2020) (explaining that the ALJ erred in assigning significant weight to a non-examining physician's opinion and rejecting a treating physician's opinion, both of which addressed the claimant's mental impairments, and that the "errors were not harmless" because although "the ALJ permitted [the claimant's] claim to proceed past step two . . . , the errors resulted in a [RFC] that excluded the significant [and improperly discounted] limitations caused by [the claimant's] depression and other mental impairments"); *Urban v. Saul*, 808 F. App'x 453, 455 (9th Cir. 2020) ("[T]he [step two] error was not harmless here, because in determining [the] RFC, which identified no limitations stemming from [the claimant's] mental impairment, the ALJ improperly discounted the opinions of three medical providers . . . who concluded that [the claimant's] severe depression and anxiety impacted his ability to work."); *see also Venezia*, 765 F. App'x at 320 (holding that the ALJ committed harmful error in finding no severe impairment at step two because the ALJ erred in discounting the claimant's testimony and lay witness testimony).

Second, and importantly, a claimant asserting that an ALJ's step-two findings resulted in harmful error must identify and detail what limitations should have been included in the ALJ's RFC determination. *See Delgadillo v. Kijakazi*, No. 20-56211, 2022 WL 301548, at *3 (9th Cir. Feb. 1, 2022) (rejecting the claimant's argument that the ALJ "failed to consider the impact of [certain] functional impairments" because the claimant's "brief . . . fail[ed] to 'detail what other

physical limitations' should have been included in the RFC based on these considerations, which overlap with points the ALJ expressly considered" (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009))); *Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir. 2018) ("[The claimant] fails to identify . . . limitations that the ALJ should have incorporated into the RFC. As a result, [the claimant] has not argued the issue specifically and distinctly as required to invoke the Court's review.") (simplified); *see also Cramer v. Berryhill*, 706 F. App'x 385, 385-86 (9th Cir. 2017) ("Any error in failing to specifically discuss [certain impairments] at step two is harmless because the ALJ considered all the evidence in assessing [the RFC], and [the claimant] fails to identify any medical evidence supporting additional functional limitations that the ALJ did not consider." (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007))).

B.    **Analysis**

1.    **Respiratory Impairments**

Plaintiff argues that the ALJ erred by failing to include her COPD/emphysema among her severe impairments. (Pl.'s Opening Br. at 6.) Plaintiff acknowledges that the ALJ found that she suffers from several severe physical impairments and thus resolved step two in her favor. (*Id.* at 4.) Further, the ALJ's decision reflects that she addressed severe and non-severe impairments, including COPD/emphysema and bipolar disorder/anxiety, at the later steps. (*See* Tr. 21-22, 139-42).

Plaintiff nevertheless argues that the ALJ's step-two error was harmful because it resulted in an RFC and VE hypothetical that excluded significant COPD/emphysema-related limitations. (Pl's Opening Br. at 6-8.) Plaintiff emphasizes that due to breathing difficulties caused by her COPD/emphysema, she needs to "avoid certain environmental exposures," and is limited in

terms of her "exertional capacities, including, but not limited to standing, walking, and lifting."
(*Id.* at 6.)

### a.     Environmental Limitations

In terms of environmental limitations, Plaintiff identifies a specific limitation that she
believes the ALJ should have included in the RFC: A limitation addressing Plaintiff's need to
avoid concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc." (*Id.* at 7-8.) As
explained below, the Court concludes the ALJ's failure to account for this specific limitation was
harmless error.

As Plaintiff correctly points out, the ALJ's RFC omits a limitation that she effectively
credited. The non-examining state agency physicians who reviewed Plaintiff's medical records
determined that she needed to avoid concentrated exposure to "[f]umes, odors, dusts, gases, poor
ventilation, etc." (Tr. 114, 126) (bold typeface omitted). In her November 2020 decision, the ALJ
effectively credited the state agency physicians' opinions by declining specifically to address any
medical opinion evidence and choosing instead to "incorporate[] . . . by reference" the "findings
[and] rationale" set forth on pages ten through thirteen of the first ALJ's decision. (*See id.* at 21,
incorporating Exhibit 5A at "pages 10-13," which correspond to *id.* at 139-42). On these
incorporated pages, the first ALJ assigned "significant weight" to the state agency physicians'
opinions because he determined that they were "highly qualified medical sources who are also
experts in the evaluation of medical issues in disability claims under the [Social Security] Act,"
and their findings were "consistent with the objective medical findings of record." (*Id.* at 142.)

Although both ALJs formulated an RFC that accounted for an environmental limitation
that a state agency physician identified (i.e., Plaintiff's need to avoid concentrated exposure to
hazards, such as machinery and heights, *see id.* at 114, 126), they failed to address Plaintiff's
need to avoid concentrated exposure to "[f]umes, odors, dusts, gases, poor ventilation, etc." (*See*

*id.* at 20, 139). The question, then, is whether this omission was a harmful error. The Court finds that it was not.

Relying on the VE's testimony, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that an individual with the assessed RFC could perform, including work as a (1) Garment Folder, DICOT 789.687-066, 1991 WL 681266, (2) Assembler, Electrical Accessories I, DICOT 729.687-010, 1991 WL 679733, and (3) Inspector and Hand Packager, DICOT 559.687-074, 1991 WL 683797.[4] (Tr. 22, 45.) The Commissioner acknowledges that the RFC and VE hypothetical did not include the environmental limitation that Plaintiff claims was improperly omitted. (Def.'s Br. at 5.) The Commissioner argues that any error was harmless because the jobs identified as suitable for Plaintiff do not involve concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc." (*Id.*)

The Court agrees that any error was harmless. Plaintiff did not file a reply challenging the Commissioner's claim that any error was harmless. Several courts have also found harmless error under nearly identical circumstances. *See Paul W. H. v. Comm'r of Soc. Sec.*, No. 20-6858, 2022 WL 1913281, at *5 (W.D.N.Y. June 3, 2022) (holding that "any error in failing to adopt [the physician's] specific opined limitation that [the claimant] 'should avoid exposure to dust, smoke, and any respiratory irritants' would be harmless," because as the Commissioner explained, "none of the representative occupations identified by the [VE]," including inspector and hand packager, DICOT 559.687-074, "require exposure to respiratory irritants or other environmental conditions"); *Saundra A. v. Saul*, No. 19-842, 2020 WL 832304, at *5 (W.D.

---

[4] "'DICOT' is the name of the on-line database on Westlaw that contains all of the job descriptions that are found in the fourth edition of the Dictionary of Occupational Titles." *Krueger v. Astrue*, 337 F. App'x 758, 761 n.4 (10th Cir. 2009).

Wash. Feb. 19, 2020) (noting that the state agency physician opined that the claimant needed to "avoid concentrated exposure to vibration, hazards, respiratory irritants, and extreme heat or cold" and the ALJ failed adequately to explain why he did not fully credit or account for these environmental limitations, and holding that "any error in failing to include [the state agency physician's] environmental limitations in the RFC was harmless" because the ALJ found that the claimant could perform two jobs, including electrical accessories assembler, DICOT 729.687-010, that "require[d] no exposure to extreme heat or cold, vibrations, hazards, or 'other' environmental conditions"); *Hommell v. Saul*, No. 19-00027, 2020 WL 7220523, at *7 (W.D. Va. June 4, 2020) (explaining that the jobs the VE identified as suitable for the claimant, including garment folder, DICOT 789.687-066, did not involve any "exposure to environmental conditions," such as "humidity, temperature extremes, toxic chemicals or atmospheric conditions"); *Fairchild v. Colvin*, No. 14-00042, 2015 WL 1442788, at *12 (M.D. Fla. Mar. 27, 2015) (explaining that "[t]he problem for [the claimant was] that concentrated exposure to extreme cold, extreme heat, humidity, vibration, and pulmonary irritants [was] not required for any of the jobs[, including electrical accessories assembler, DICOT 729.687-010, that] the ALJ found [the claimant] could perform," and holding that the "even if the omission of some of [the state agency physician's] environmental limitations was error, the error was harmless") (simplified).

For these reasons, the ALJ did not commit harmful error in formulating an RFC that failed to include a limitation on avoiding concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc."

### b. Exertional Limitations

In addition to the specific environmental limitation discussed above, Plaintiff argues that in assessing her COPD/emphysema and RFC, the ALJ also failed adequately to account for her

"exertional capacities, including, but not limited to standing, walking, and lifting." (Pl.'s Opening Br. at 6.) In relevant portions of her brief, however, Plaintiffs devotes little to no attention to her exertional capacities and fails to identify any specific or more restrictive exertional limitation that the ALJ should have included in the RFC and VE hypothetical. (*See id.* at 3, 6, 8-11, 18-19, citing only Plaintiff's November 2020 hearing testimony "confirm[ing]" that her "breathing deficits a[are] exacerbated by exertion, including walking and . . . sitting at times").

Given Plaintiff's failure to identify a specific or more restrictive exertional limitation that the ALJ should have included in her RFC, and the ALJ's consideration of Plaintiff's breathing issues and exertional capacities (*see id.* at 21, incorporating the findings from *id.* at 139-42 and stating that the "exertional limitations set forth in the prior ALJ decision reasonably address the claimant's intermittent breathing problems"; *id.* at 139-42, addressing Plaintiff's ability to walk two miles and claim that she "lied" to her physician about "exeris[ing] twice a week, walking two miles," and discounting Plaintiff's testimony about not being "able to stand and walk for longer than 10 to 15 minutes before she has low back pain"), the Court finds that Plaintiff failed to meet her burden of showing that the ALJ committed harmful error. *See Delgadillo,* 2022 WL 301548, at *3 ("[The claimant] contends that the ALJ failed to consider the impact of additional functional impairments . . . in determining her RFC. Her brief, however, fails to 'detail what other physical limitations' should have been included in the RFC based on these considerations, which overlap with points the ALJ expressly considered." (quoting *Valentine,* 574 F.3d at 692 n.2)).

The Court also notes that the relevant portions of Plaintiff's brief place considerable emphasis on the state agency physician's findings related to her COPD/emphysema. (*See* Pl.'s

Opening Br. at 9-11, arguing that a finding about Plaintiff's COPD/emphysema being "stable or well-controlled" was not supported by the state agency physician's previously-described "medical opinion evidence," and that the ALJ's findings about how frequently Plaintiff used her rescue inhaler and failure to stop smoking "disregarded other probative evidence," namely, the state agency physicians' "[i]mportant[]" finding about Plaintiff's limited "respiratory function," and repeatedly discussing respiratory irritants and the ALJ's failure to account for the state agency physicians' credited opinion about the environmental limitation discussed above).

Notably, the state agency physicians agreed that despite her COPD/emphysema, Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently and sit, stand, or walk about six hours during an eight-hour workday. (Tr. 112, 124-25.) Consistent with these opinions that Plaintiff claims should be (and were) credited, the ALJ formulated an RFC and VE hypothetical that limited Plaintiff to "a range of light work." (Tr. 20, 44-45); *cf. Guillermina R. v. Kijakazi, No. 20-56053, 2021 WL 6116636, at \*1 (9th Cir. Dec. 27, 2021)* ("The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time") (simplified); *Mix v. Saul, 843 F. App'x 978, 979 (9th Cir. 2021)* ("[L]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and that such a job is light work *either* (1) when it requires a good deal of walking or standing, or (2) when it involves sitting most of the time with some pushing and pulling of arm or leg controls.") (simplified).

Plaintiff also makes a passing reference to the ALJ "improperly discounting [her] testimony[.]" (Pl.'s Opening Br. at 9.) Plaintiff, however, appears to be addressing the ALJ's findings at step two. Plaintiff fails to address the applicable standard of review for cases where a

claimant asserts that an ALJ erred in rejecting her symptom testimony (i.e., if there is no evidence of malingering, the clear and convincing reasons standard applies, *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)), or several of the reasons the ALJ provided and/or incorporated for discounting her symptom testimony at later stages, including, but not limited to, conservative and effective treatment, conflicting or unremarkable medical evidence, and evidence about her ability to stand and walk. (*See* Pl.'s Opening Br. at 6-11, 18-19; Tr. 20-22, 139-42, reflecting that the ALJ discussed symptom testimony and made and incorporated findings); *see generally Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (reflecting that it is proper to affirm an ALJ's discounting of a claimant's testimony if the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [it] as not credible"). Plaintiff also fails to address that she relies on and argues that the ALJ credited the state agency physicians' opinion, which are consistent with the RFC but conflict with her symptom testimony.

Plaintiff's arguments fail to demonstrate that the ALJ committed harmful error. It is the ALJ's responsibility to "resolve[] conflicts and ambiguities between evidence," *Nichols v. Berryhill*, 722 F. App'x 650, 652 (9th Cir. 2018) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008)), and Plaintiff fails to explain why the ALJ erred in resolving such conflicts here and relying on the state agency physicians' opinions about Plaintiff's exertional limitations.

This case is similar to *Meyers v. Berryhill*, 733 F. App'x 914, 916 (9th Cir. 2018). In *Meyers*, the claimant failed "adequately to develop several of her arguments 'specifically and distinctly,' including those pertaining to the ALJ's assessment of evidence from [physicians and physical therapists], . . . as required to invoke the Court's review." *Id.* Instead, the claimant

"assert[ed] in declaratory language that the ALJ 'failed to properly evaluate' or 'improperly discredited' evidence from named sources." *Id.* The Ninth Circuit explained "[f]or such assertions to be cognizable on appeal, they must be accompanied by meaningful arguments other than that the disputed evidence is inconsistent with [certain] testimony." *Id.* The Ninth Circuit added that although the claimant argued "the ALJ erred by failing to acknowledge portions of the medical evidence support her testimony, the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Id.* (simplified). In the end, "substantial probative evidence supports the ALJ's decision to deny [the claimant's] application." *Id.*

As in *Meyers*, Plaintiff fails adequately to develop many of her arguments, including those pertaining to her symptom testimony and certain limitations omitted from her RFC. *See Bagley v. Comm'r of Soc. Sec.*, No. 16-00389, 2018 WL 1024162, at *8 (E.D. Wash. Feb. 6, 2018) (declining to address the ALJ's consideration of a medical expert's testimony because the claimant "fail[ed] to specifically identify or challenge the ALJ's actual finding in his briefing"), *report and recommendation adopted*, 2018 WL 1023105, at *1 (E.D. Wash. Feb. 22, 2018). The key question is whether substantial evidence supports the ALJ's decision to deny Plaintiff's application. Plaintiff argues that the ALJ credited, and the Court should credit, medical opinion evidence that is consistent with the exertional limitations set forth in the ALJ's RFC assessment. It is therefore evident that substantial probative evidence supports the denial of benefits on this ground.

### c.    Conclusion

Under these circumstances, Plaintiff fails to demonstrate that the ALJ committed harmful error in evaluating the severity of her COPD/emphysema and formulating an RFC and VE

hypothetical. *See Havens*, 2022 WL 2115109, at *1 (holding that that even if the ALJ's

"determination was in error, it was harmless because the ALJ considered these conditions among

his claimed impairments in the overall [RFC] determination"); *Fowler*, 2021 WL 5823704, at *1

(holding that "any error was harmless because the ALJ still resolved step two in [the claimant's]

favor and considered all medically determinable impairments (severe and non-severe) at the later

steps").

### 2.    Mental Health Impairments

Plaintiff argues that the ALJ erred by failing to include her "bipolar disorder/anxiety"

among her severe impairments. (Pl.'s Opening Br. at 1, 5, 11-17.) As discussed, the ALJ

resolved step two in Plaintiff's favor and considered both severe and non-severe impairments,

including bipolar disorder/anxiety, in formulating an RFC. (*See* Tr. 21-22, 139-42). Plaintiff

argues that the ALJ's step-two findings resulted in harmful error because she "disregarded" and

failed to formulate an RFC that accounted for certain "workplace limitations." (Pl.'s Opening Br.

at 13.)

As with COPD/emphysema-related limitations that Plaintiff claims the ALJ improperly

omitted from the RFC, Plaintiff fails specifically to identify a mental health-related limitation

that the ALJ should have included in her RFC. (*See id.* at 11-19). Plaintiff appears to suggest that

the ALJ should have formulated an RFC that included ill-defined limitations related to

(1) absenteeism, (2) interactions and contact with others, such as the public, coworkers, and/or

supervisors, and (3) the ability to maintain concentration, persistence, and pace. (*See id.* at 11-17,

citing record evidence demonstrating that Plaintiff was at one point restricted to working "2 days

on, and then 2 days off," Plaintiff does not currently work full-time and typically works twenty-

eight to twenty-nine hours a week, Plaintiff has "walked out of" or "stormed away" from public

places, been hostile to staff, and testified that she has "significant problems being around others,

PAGE 16 – OPINION AND ORDER

including leaving her home or being in a store," and is "unable to leave her home unless she is accompanied by another person," and arguing that the ALJ erred at step two in relying on Plaintiff's activities to find only mild limitations in concentration, persistence, and pace).

Plaintiff's arguments fail to demonstrate that she has met her burden of demonstrating that the ALJ committed harmful error. As to absenteeism, Plaintiff fails to cite any supporting medical opinion from the period at issue (November 1, 2014 to June 1, 2018) endorsing a limitation (concrete or otherwise) related to absenteeism. Plaintiff cites only to (1) her testimony that post-June 2018, she still "miss[es] work quite a bit," works about thirty hours a week, and "leave[s] earl[y]" two to three days a week "mostly" due to "pain in [her] neck and back" but at times due to "panic attacks," and (2) a September 2010 treatment note reflecting that at one point, a treating nurse practitioner "[w]rote [a] letter allowing [Plaintiff] to work her probation 2 days on, 2 off due to her anxiety." (Pl.'s Opening Br. at 13, 16, citing and/or relying on Tr. 40, 523.)

In terms of limitations related to social interactions and maintaining concentration, persistence, and pace, Plaintiff likewise fails to cite any supporting medical opinion from the period at issue. Plaintiff's brief focuses instead on whether substantial evidence supports the findings that the ALJ made at step two and with respect to the four broad functional areas known as the "paragraph B" criteria. (*See id.* at 13-17, addressing the "severity" of Plaintiff's mental impairments, the ALJ's reasons for finding Plaintiff's "anxiety disorder [to be] non-severe," whether the "evidence as a whole" reflects that Plaintiff is only "'mildly' [limited] as found by the ALJ in regard to the various domains of mental functioning" and "the 'B criteria,'" and whether the ALJ erred in assessing Plaintiff's ability to maintain concentration, persistence, and pace). Ultimately, Plaintiff argues that the ALJ "engaged in improper analysis" in assessing the

"severity" of her mental health impairments, and that the "record as a whole establishes [that her] bipolar disorder/anxiety impairments significantly impacted her ability to work, and constituted severe mental impairments that resulted in significant work-related limitations of function." (*Id.* at 15, 17.)

The Court finds Plaintiff's arguments unpersuasive. Plaintiff suggests that in assessing the severity of her mental health impairments at step two, the ALJ "improperly used" certain facts "as a basis to reject her allegations," and relies largely on her own testimony and self-reports in arguing that the ALJ's step-two findings resulted in harmful error. (*Id.* at 13-17.) Plaintiff, however, fails to acknowledge that the ALJ credited the non-examining state agency "medical and psychological" consultants' opinions. (*See* Tr. 21-22, 139-42). Those opinions were issued during the period at issue, identify no mental health-related RFC limitations, and reflect that despite mild limitations in social functioning and maintaining concentration, persistence, and pace and no limitation in activities of daily living or episodes of decompensation of an extended duration, Plaintiff can perform a range of light and unskilled work. (*Id.* at 111-15, 123-28.) After considering Plaintiff's non-severe mental health-related limitations, including bipolar disorder and anxiety, at later steps, the ALJ formulated an RFC and VE hypothetical that are consistent with this credited medical opinion evidence. (*Compare id.* at 20-21, 45, 139-42, *with id.* at 111-15, 123-28.)

These facts are significant because (1) the adequacy of the ALJ's RFC turns on whether it is consistent with the medical evidence, and (2) if an ALJ considers severe and non-severe impairments at later steps, the ALJ need not account for mild mental impairment limitations in formulating the RFC. *See Cramer*, 706 F. App'x at 385-86 ("Any error in failing to specifically discuss [certain impairments] at step two is harmless because the ALJ considered all the

evidence in assessing [the RFC], and [the claimant] fails to identify any medical evidence supporting additional functional limitations that the ALJ did not consider."); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting that the ALJ relied on the "concrete restrictions available to him," and emphasizing that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace [i.e., one of the 'paragraph B'/step-two criteria] where the assessment is consistent with restrictions identified in the medical testimony"); *Dale S.M. v. Comm'r of Soc. Sec. Admin.*, No. 3:19-cv-00238-JR, 2020 WL 1105107, at *6 (D. Or. Mar. 6, 2020) (explaining that "the mild, moderate, marked, or extreme limitations, in the four broad ['paragraph B'] functional categories . . . that are evaluated at steps two and three are not an RFC assessment," an "ALJ is under no obligation to include in the RFC assessment any limitations she finds at [steps two and three]," and "the adequacy of the ALJ's RFC turns on whether it is consistent with the medical evidence") (simplified); *cf. Montano v. Comm'r of Soc. Sec. Admin.*, No. 21-00215, 2022 WL 1617306, at *3 (D. Ariz. May 23, 2022) (explaining that "mild mental impairment limitations need not be reflected in the RFC" if the ALJ "give[s] some indication that she considered the limiting effects of a non-severe mental impairment in [formulating] the RFC," but finding harmful error because it was not "clear" that the ALJ considered non-severe mental impairments after step two) (citations omitted); *Kitty S. v. Kijakazi*, No. 21-00390, 2022 WL 2117160, at *5-6 (C.D. Cal. June 13, 2022) (finding reversible error because the ALJ made "mild step two paragraph B findings" but did not discuss the claimant's non-severe mental impairments at later steps, "in particular in formulating [the] RFC" (citing *Hutton v. Astrue*, 491 F. App'x 850, 951 (9th Cir. 2012))).

Furthermore, although Plaintiff suggests that the ALJ erred in discounting some of her testimony, these arguments appear limited to the ALJ's step-two findings. To be sure, Plaintiff

does not address the standard that would apply to the ALJ's assessment of her symptom testimony; specifically argue that the ALJ failed to provide clear and convincing reasons for discounting her symptom testimony; cite or compare this case to Ninth Circuit precedent on the evaluation of symptom testimony; or respond to or dispute the Commissioner's assertion that she "did not challenge the ALJ's treatment of her subjective complaints on appeal to this Court" and that she therefore "waived" such an argument. (Def.'s Br. at 2, 10.)

On this record and in light of the legal authorities cited herein, the Court finds that Plaintiff has failed to meet her burden of demonstrating that the ALJ committed harmful error. *See Davis v. Berryhill*, 743 F. App'x 846, 849 (9th Cir. 2018) ("[The claimant] does not identify any limitations stemming from [her allegedly severe] peripheral neuropathy [that] the ALJ did not include in the sequential analysis. As a result, [the claimant] has not demonstrated any error that might be harmful.").

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ "must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "germane to each witness." *Stout*, 454 F.3d at 1056 (citations omitted). However, "when an ALJ provides clear and convincing reasons for rejecting the [reliability] of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's [subjective] complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

///

///

B.      Analysis

Plaintiff argues that the ALJ harmfully erred because she "made no mention" of the lay witness testimony from Plaintiff's son, Stephen B., and friend Estavillo, and gave only "invalid reasons as detailed above" for rejecting Plaintiff's testimony. (Pl.'s Opening Br. at 1, 19-20.) The Court disagrees.

As the Commissioner correctly points out, the ALJ incorporated the first ALJ's evaluation and findings with respect to Stephen B. and Estavillo's lay witness testimony. (Def.'s Br. at 10, citing Tr. 21, 138; *see also* Tr. 19, 21, incorporating the findings and rationale corresponding to *id.* at 137-39 and 139-42, respectively). As a result, the ALJ effectively assigned "limited weight" to Stephen B. and Estavillo's testimony "to the extent that their accounts of [Plaintiff's] abilities [were] relatively consistent with what she wrote in her function report." (*Id.* at 21, 138.)

The ALJ also incorporated and relied on the first ALJ's finding that Stephen B. and Estavillo's testimony had "less probative value" because "they are interested parties." (*Id.*) An ALJ may not discount testimony from a lay witness on the ground that he or she is an "interested party." *Kellie Ann B. v. Comm'r of Soc. Sec.*, No. 1:18-cv-01427-HZ, 2019 WL 2518120, at *7 (D. Or. June 18, 2019) (citing *Ryan-Werry v. Colvin*, 641 F. App'x 684, 688 (9th Cir. 2015)). Accordingly, the ALJ erred in discounting Stephen B. and Estavillo's testimony on this ground.

However, the ALJ also assigned less weight to Stephen B. and Estavillo's testimony because it was "relatively consistent" with Plaintiff's reports, which the ALJ discounted. Plaintiff acknowledges that any error in discounting Stephen B. and Estavillo's lay testimony would be harmless if the ALJ "validly rejected" Plaintiff's "similar" testimony, and does not dispute the Commissioner's assertion that "the lay testimony mirrored Plaintiff's testimony." (Pl.'s Opening Br. at 19; Def.'s Br. at 10.) Relying on her step-two assignments of error, Plaintiff argues the

PAGE 21 – OPINION AND ORDER

ALJ's error was harmful because she gave "invalid reasons" for discounting her testimony. (Plaintiff's Opening Br. at 19.)

As discussed, Plaintiff's step-two arguments about the ALJ's treatment of portions of her testimony are not adequately developed and thus fail adequately to invoke this Court's review or a permit a meaningful response from the Commissioner, who asserts that Plaintiff "did not challenge the ALJ's treatment of her subjective complaints on appeal to this Court" and "waived" such an argument. (Def.'s Br. at 2, 10.) Plaintiff has not addressed the Commissioner's assertions or the standard that applies to the ALJ's assessment of her symptom testimony; argued that the ALJ failed to provide clear and convincing reasons for discounting her symptom testimony; or cited or compared this case to Ninth Circuit precedent on the evaluation of symptom testimony. Plaintiff also relies on, and asks the Court to credit, medical opinions that conflict with her testimony but are consistent with the ALJ's RFC, VE hypothetical, and decision to find her not disabled.

In any event, the ALJ only needed to provide one clear and convincing reason for discounting Plaintiff's testimony, *see, e.g.*, *Sims*, 704 F. App'x at 704, and Plaintiff fails to address all of the reasons the ALJ provided and incorporated for doing so. (*See* Tr. 21-22, 139-42; Pl.'s Opening Br. at 5-20). For example, Plaintiff fails to address that after observing that the evidence does not demonstrate that Plaintiff's symptoms "preclude her from performing all light work" and that Plaintiff "testified she is not able to stand and walk for longer than 10 to 15 minutes before she has low back pain," the ALJ observed that Plaintiff testified that "she lied to her doctor when she stated she could walk up to two miles in February 2016," and that "she did walk to her doctor's appointments, which were two miles away." (*Id.* at 141; *see also id.* at 21, incorporating this finding and rationale; *id.* at 63, "Q. There was a note that you exercised twice

a week and the type of exercise was a two mile walk. A. Yes. I do not. I think I lied to the doctor

when I said that. I do have – I did have to walk to the doctor's office for two miles but I can't do

that anymore [i.e., up to and including July 28, 2017].")"; *cf. id.* at 1074, April 26, 2017, "Can

walk about 1/2 mile without [being short of breath]. She walks up to 2 miles frequently."). The

ALJ added that "[m]any of Plaintiff's statements during the hearing were inconsistent[.]" (*Id.*at

141.)

Notably, courts have affirmed an ALJ's decision to discount a claimant's testimony on

similar grounds. For example, in *Fennell v. Berryhill*, 721 F. App'x 652, 654 (9th Cir. 2018), the

Ninth Circuit held that the ALJ provided specific, clear, and convincing reasons for discounting

the claimant's testimony, and noted that she "lied to her doctor" about failing to follow a

prescribed course of treatment and "made inconsistent statements concerning her ability to care

for her young son[.]" *Id.* Similarly, in *Danielle R. v. Comm'r of Soc. Sec.*, No. 20-766, 2021 WL

2635192, at *4 (W.D. Wash. June 24, 2021), the ALJ "reiterated" the previous ALJ's reasons for

discounting the claimant's testimony and the claimant had "not mount[ed] any significant

challenge to the ALJ's findings with respect to her lack of candor[.]" *Id.* The court explained that

it is proper for an ALJ to consider whether a claimant had been a "reliable historian and

presented conflicting information[.]" *Id.* (citing *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

2002)); *Thomas*, 278 F.3d at 959 (holding that it was reasonable for the ALJ to infer that the

claimant's lack candor about drug and alcohol use "carried over" to her description of her

"physical pain"). Even if this was not a clear and convincing reason for discounting Plaintiff's

testimony, there are other examples that Plaintiff fails to address.

For all of these reasons, the Court concludes that the ALJ did not commit harmful error in

discounting Stephen B. and Estavillo's lay witness testimony. *See Jacob v. Berryhill*, 756 F.

App'x 709, 711-12 (9th Cir. 2018) (noting that the ALJ provided clear and convincing reasons for discounting the claimant's testimony, which "overlap[ped] substantially with that of [the lay witness]," and holding that "any error was harmless" in discounting the lay witness testimony because the ALJ's reasons for rejecting the claimant's testimony applied with equal force to the lay witness); *Burkett v. Berryhill*, 732 F. App'x 547, 553 (9th Cir. 2018) (holding that the ALJ "did not err by declining to discuss" lay witness testimony, and any error was harmless because the lay "testimony described the same limitations as [the claimant's properly discounted] testimony") (simplified).

## CONCLUSION

Based on the foregoing reasons, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 13th day of July, 2022.

*Stacie F. Beckerman*
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge